OPINION
{¶ 1} Defendant-appellant, Calvin B. Smith, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of gross sexual imposition and three counts of rape. Because the trial court did not abuse its discretion in allowing amendment of the indictment, because the sufficiency and weight of the evidence support defendant's convictions, and because defendant received effective assistance of counsel, we affirm.
 {¶ 2} On October 10, 2002, defendant was charged in a five-count indictment with sexual misconduct involving two girls under the age of 13. Specifically, Count 1 alleged gross sexual imposition, a violation of R.C. 2907.05, based upon sexual contact with S.F. Counts 2, 3, and 4 alleged rape, a violation of R.C. 2907.02, based upon sexual conduct in the form of vaginal intercourse, anal intercourse, and fellatio, respectively, with S.F. Count 5 alleged rape, a violation of R.C. 2907.02, based upon sexual conduct in the form of fellatio, with E.C. The matter was tried to a jury, and, at the close of the prosecution's case, the trial court dismissed Count 3. Upon motion of the prosecution, the trial court amended Count 5 to charge rape by digital vaginal penetration rather than fellatio. The jury found defendant guilty of Counts 1, 2, 4, and 5. The trial court sentenced defendant accordingly and adjudicated him a sexual predator. Defendant appeals, assigning the following errors:
I. The trial court committed prejudicial error by permitting the State of Ohio to amend the indictment during the trial contra Rule 7(D).
II. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
III. The defendant-appellant was denied the effective assistance of counsel as guaranteed under the Fifth, Sixth andFourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
 {¶ 3} According to the state's evidence, Diane Moore was the foster mother of S.F. Moore's neighbors, Keith and Mallory Oakleaf, were the foster parents of E.C, the sister of S.F. From July 16, 2002 through July 18, 2002, eight-year-old S.F. and six-year-old E.C. visited their biological mother, Tiffany White, at her home in Columbus. When S.F. returned from the visit, Moore noticed she was unusually quiet and appeared to be embarrassed and upset. In unpacking S.F.'s suitcase, Moore found a pair of S.F.'s underpants which were stained with blood; according to Moore, the underpants were clean when Moore packed them prior to the visit.
 {¶ 4} The next day, Janet McCleery, a pediatric nurse practitioner employed by The Kids' Place, performed a sexual abuse assessment of both S.F. and E.C. The Kids' Place is a medical facility affiliated with Licking County Hospital which specializes in the assessment and treatment of children victimized by sexual abuse. McCleery interviewed and physically examined both girls and prepared a written report of her findings. The physical examination of S.F. revealed an intact, unlacerated hymen, but disclosed avascularization, or scarring, extending from the base of the hymen to the base of the labia minora. The physical examination of E.C. similarly revealed an intact, unlacerated hymen; again, however, the examination revealed avascularization from the base of the labia minora to the outside of the genitalia.
 {¶ 5} At trial, McCleery testified it is possible to penetrate the labia minora without penetrating the hymen and vagina; as such, an intact hymen is not inconsistent with a finding of genital penetration. McCleery further testified the avascularizations in both girls were not "acute," meaning they had not occurred in the last few days. (Tr. Vol. II, 203.) In addition, McCleery testified that avascularizations are not typically found in children who do not report a history of sexual abuse. McCleery asserted the medical findings regarding the avascularations were "indicative" but not "diagnostic" of sexual abuse. McCleery's testimony in this regard is corroborated by her written reports, which state: "Findings concerning, but not diagnostic." See State's Exhibits 6 and 7.
 {¶ 6} S.F. testified that during the visit to her mother's home, defendant, her cousin, touched her "private place" with both his hands and his "front private." (Tr. Vol. II, 85.) She further stated defendant put his "front private" in her mouth and something came out of it that tasted "bad." (Id. at 85, 91.) She also averred defendant put his "front private" in her "front private" and it hurt. (Id. at 86, 90.) S.F. further testified defendant told her he would kill her if she told anyone what he had done.
 {¶ 7} E.C. testified that while she was at her mother's house, defendant put his finger in her "pee-pee" and that it felt "bad." (Tr. Vol. II, 140.) She further testified she saw defendant perform the same act on S.F.
 {¶ 8} By the first assignment of error, defendant contends the trial court erred by allowing the state to amend the indictment. Following presentation of its case-in-chief, the prosecution moved, pursuant to Crim.R. 7(D), to amend Count 5 of the indictment to identify the sexual conduct which formed the basis of the rape charge as digital vaginal penetration rather than fellatio, based upon E.C.'s trial testimony. The trial court overruled the objection and allowed the amendment. Later, during discussions related to jury instructions, defendant requested the trial court declare a mistrial on grounds he was prejudiced by the amendment. The trial court overruled the motion for mistrial, concluding the amendment did not prejudice defendant.
 {¶ 9} Crim.R. 7(D) governs the amendment of indictments and provides, in pertinent part, that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."
 {¶ 10} A trial court's decision allowing an amendment that changes the name or identity of the offense charged constitutes reversible error regardless of whether the accused can demonstrate prejudice. State v. Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490. When an amendment is allowed that does not change the name or identity of the offense charged, the accused is entitled to a discharge of the jury or a continuance, "unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." Id., quoting Crim.R. 7(D). A trial court's decision to permit the amendment of an indictment is reviewed under an abuse of discretion standard.State v. Beach, 148 Ohio App.3d 181, 2002-Ohio-2759, at ¶ 23, appeal not allowed, 96 Ohio St.3d 1516, 2002-Ohio-4950. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980),62 Ohio St.2d 151, 157. To demonstrate error, defendant must show not only that the trial court abused its discretion, but that the amendment prejudiced his defense. Id.
 {¶ 11} Amending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense. In State v. Hickman, Summit App. No. 20883, 2002-Ohio-3406, appeal not allowed (2004),102 Ohio St.3d 1412, 2004-Ohio-1763, the court upheld a pretrial amendment changing the sexual conduct forming the basis of the rape charge from fellatio to cunnilingus, stating, "the amendment changes neither the name of the charge of rape, nor its identity. The penalty and the degree of the offense were not altered by the amendment. * * * Thus, the amendment was proper." Id. at ¶ 42.
 {¶ 12} Similarly, in State v. McGill (Dec. 8, 2000), Greene App. No. 99CA25, appeal not allowed (2001), 91 Ohio St.3d 1493, the court upheld the amendment of a bill of particulars to allege the victim was raped by vaginal penetration rather than anal penetration based upon the victim's testimony at trial. Noting that R.C. 2907.02(A)(1)(b), the rape statute, proscribes "sexual conduct" with a person not the spouse of the offender when the other person is under the age of 13, and that R.C. 2907.01(A)(1) defines "sexual conduct" to include both vaginal and anal intercourse as well as the insertion of any body part into the vaginal or anal cavity of another, the court concluded the amendment "did not affect the elements, name, or identity of the offense because regardless of whether the incident involved the vaginal or anal cavity, it was sexual conduct which constituted rape."
 {¶ 13} Here, in Count 5, defendant was charged under R.C.2907.02(A)(1)(b) with the rape of E.C. The sexual conduct underlying the rape charge was fellatio. However, E.C. testified at trial that defendant inserted his finger into her vagina. As noted, the definition of sexual conduct in R.C. 2907.02(A) includes both fellatio and the insertion of any body part, including a finger, into the vaginal cavity of another. As inHickman and McGill, the amendment of the indictment did not affect the name or identity of the offense because regardless of whether the incident involved fellatio or digital vaginal penetration, defendant's actions amounted to sexual conduct which constituted rape.
 {¶ 14} Since the amendment did not change the name or identity of the offense charged, defendant was entitled to a discharge of the jury or a continuance, unless it clearly appears from the record the amendment did not mislead or prejudice defendant. Honeycutt, supra; Crim.R. 7(D). Defendant contends the timing of the state's motion to amend prejudiced him, as it was made after the prosecution had concluded its case. Defendant argues he thus was foreclosed the opportunity to effectively cross-examine the prosecution's witnesses as to the allegation of digital vaginal penetration.
 {¶ 15} Defendant fails to explain how his cross-examination of the prosecution's witnesses would have differed had he known he needed to defend against a claim of digital vaginal penetration. Defendant was afforded the opportunity to cross-examine E.C. after she testified defendant raped her by digital vaginal penetration. If defendant felt he needed to further cross-examine E.C., he could have requested the opportunity to do so after the indictment was amended; he did not. Further, since E.C.'s testimony preceded the testimony of McCleery, defendant could have explored during McCleery's cross-examination how E.C.'s testimony might have made a difference in the medical assessment. Finally, since the testimony of both E.C. and McCleery was provided during the prosecution's case-in-chief, defendant had the opportunity to attempt to rebut that testimony during his case-in-chief. For these reasons, we conclude defendant has failed to demonstrate either that the trial court abused its discretion in amending the indictment or that the amendment prejudiced his defense. Accordingly, defendant's first assignment of error is overruled.
 {¶ 16} Defendant's second assignment of error challenges his rape convictions as not supported by sufficient evidence and as being against the manifest weight of the evidence. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In this inquiry, a reviewing court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." Id. at 390. (Cook, J., concurring.) Thus, the court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Smith (1997),80 Ohio St.3d 89, 113, certiorari denied, Smith v. Ohio, 523 U.S. 1125,118 S.Ct. 1811, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 17} As noted, R.C. 2907.02 proscribes rape, as follows:
(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
* * *
(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
* * *
(B) Whoever violates this section is guilty of rape, a felony of the first degree. * * * [If] the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.
 {¶ 18} R.C. 2907.01(A) defines "sexual conduct," in pertinent part, as "vaginal intercourse between a male and female[,] * * * fellatio * * * between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * cavity of another. Penetration, however slight, is sufficient to complete vaginal * * * intercourse."
 {¶ 19} The prosecution presented sufficient evidence on each element of the rape counts to sustain defendant's convictions. Defendant challenges his convictions solely on the basis that the victims "used only general language and only in the briefest manner described the sexual assaults" and thus did not identify with specificity how the acts occurred. Contrary to defendant's contention, both S.F. and E.C. offered specific details about the incidents. S.F. testified defendant put his "front private" in her "front private" and in her mouth. On anatomically correct diagrams of both the male and female human body, S.F. identified a male's penis as his "front private" and a female's vagina as her "front private." E.C. testified defendant put his finger in her "pee-pee." E.C. identified a female's vagina as her "pee-pee" on an anatomically correct diagram of the female human body. The victims' testimony sufficiently describes the acts of vaginal intercourse, fellatio, and vaginal digital penetration.
 {¶ 20} Defendant further asserts his convictions are against the manifest weight of the evidence. Defendant suggests the victims' young ages and simplistic language renders their testimony unworthy of credibility. Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented.Thompkins, at 386-387. In a manifest weight challenge, the reviewing court sits as a "thirteenth juror and makes an independent review of the record." Id. at 387. In performing this function, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} At the time they testified, S.F. and E.C. were nine and seven years old, respectively. Although their testimony was a bit simplistic, such is understandable given their ages. Without reservation, both identified defendant as the perpetrator of the crimes. Both were cross-examined thoroughly about the incidents; neither wavered in any significant manner from their versions of the events. Both demonstrated they understood the difference between a lie and the truth, and both insisted they were truthful when testifying about defendant's conduct. In addition, S.F.'s testimony was corroborated by Moore's statement that S.F. exhibited unusual and suspicious behavior after the sexual abuse occurred.
 {¶ 22} "On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. As such, a jury may believe all, part, or none of the testimony of the witnesses who appear before it. State v. Green, Franklin App. 03AP-813, 2004-Ohio-3697, at ¶ 24. In this case, the jury had the opportunity to hear the victims' testimony and judge their credibility. The jury apparently believed the victims' testimony, and the record does not provide any obvious reason to doubt their credibility. An appellate court may not substitute its judgment for that of the jury on the issue of witness credibility unless it is manifestly clear the jury lost its way.Martin, supra. Based upon the record before us, we cannot conclude the jury lost its way and created a manifest miscarriage of justice in arriving at its verdicts. To the contrary, the weight of the evidence supports all three rape convictions. Accordingly, defendant's second assignment of error is overruled.
 {¶ 23} In his third assignment of error, defendant asserts he was rendered ineffective assistance of counsel. In Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, the United States Supreme Court adopted a two-part test for determining whether counsel's performance was so defective as to require reversal of a conviction. Initially, the defendant must demonstrate that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. Id. The defendant must then show that counsel's deficient performance prejudiced the defense. Id. This requires demonstrating that but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694.
 {¶ 24} Defendant initially complains counsel was ineffective in failing to object to McCleery's testimony on the basis she was not qualified to testify as an expert. The transcript contains a detailed account of McCleery's qualifications. McCleery testified she is a registered nurse and licensed pediatric nurse practitioner with specialized training in the area of child abuse and neglect. From 1977 to 1989 and again from 1998 to 1999, she was employed as a nurse practitioner in the sexual abuse clinic at Children's Hospital in Columbus. In that capacity, she conducted physical examinations of children reporting a history of sexual abuse. Since 1999, she has conducted similar examinations at The Kids' Place. Over the course of her career, she has examined more than 1,000 children suspected of being victimized by sexual abuse. In addition, she previously has testified as an expert in the field of pediatric nurse practitioners.
 {¶ 25} Premised on her training and employment, McCleery was experienced as a nurse practitioner in the area of sexual abuse assessment of children. This court, as well as other Ohio courts, have recognized that nurse practitioners may testify as experts, pursuant to Evid.R. 702, concerning medical findings and may render opinions as to whether a patient's physical condition is or is not consistent with a history of sexual abuse. See Statev. Lee, Franklin App. No. 02AP-1340, 2003-Ohio-4059, at ¶ 33, appeal not allowed, 140 Ohio St.3d 1487, 2003-Ohio-5992; Statev. Draughon, Franklin App. No. 02AP-895, 2004-Ohio-320, appeal not allowed, 102 Ohio St.3d 1461, 2004-Ohio-2569; State v.Ramos (June 12, 1997), Cuyahoga App. No. 70129; State v.Pierce (Feb. 12, 1997), Summit App. No. 17684, appeal not allowed, 79 Ohio St.3d 1417; State v. Bragg, Licking App. No. 2003-CA-00065, 2004-Ohio-1943, at ¶ 28; State v. Eagle, Wayne App. No. 04CA0003, 2004-Ohio-3255, at ¶ 22. Here, McCleery did not opine that the victims had been sexually abused; rather, she opined that the physical findings were uncharacteristic of a patient who did not give a history of sexual abuse and were thus "indicative" of sexual abuse. McCleery's opinion is tantamount to an opinion as to whether physical findings are consistent or inconsistent with a history of sexual abuse. Pursuant to the existing precedent cited above, McCleery was qualified under Evid.R. 702 to render such an opinion. Cf. State v. Crum (Oct. 26, 1998), Stark App. No. 97-CA-0134, appeal not allowed (1999),85 Ohio St.3d 1406 (concluding a nurse practitioner's opinion that victim was sexually abused was inadmissible). As her testimony was properly admitted, defendant's trial counsel did not provide ineffective assistance by failing to object to it.Lee, at ¶ 43. Moreover, considering the compelling evidence of defendant's guilt, the exclusion of McCleery's testimony could not have created "a reasonable probability that * * * the result of the trial would have been different." Strickland, supra.
 {¶ 26} Defendant next contends counsel was ineffective in failing to object to McCleery's testimony on grounds that her opinions were not explicitly rendered to a reasonable degree of medical certainty. Contrary to defendant's contention, the transcript reveals that McCleery affirmatively stated that her opinions were given within a reasonable degree of medical certainty. As such, defendant's argument is without merit.
 {¶ 27} Finally, we note defendant contends in his brief that counsel was ineffective in failing to object when McCleery allegedly based her opinions on "national studies" which were not admitted into evidence at trial. The testimony to which defendant refers states, in pertinent part, "[a]nd in children who don't give a history of sexual abuse, I don't see this type of finding. * * * [B]ut nationally, it's been stated and how we stated it is that indicative, but it's not diagnostic." (Tr. Vol. II, 177.) At oral argument, defendant conceded he misinterpreted McCleery's testimony as relying on "national studies" and withdrew this portion of his assignment of error. Accordingly, the argument is moot and we need not address it. Defendant's third assignment of error is overruled.
 {¶ 28} Having overruled defendant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus, P.J., and Petree, J., concur.